**FIRST DIVISION
BARNES, P. J.,
LAND and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**March 14, 2024**

# In the Court of Appeals of Georgia

A23A1762. BROWNPHIL, LLC. v. CUDJOE et al.

BARNES, Presiding Judge.

Brownphil, LLC. appeals from the order of the trial court denying its motion for summary judgment on its claim seeking to quiet title to certain property located in Macon-Bibb County, granting summary judgment to Peter Kofi Amihere Cudjoe, Grier Construction Company, and unknown parties with any interest in the subject property (hereinafter collectively "respondents"), and declaring Cudjoe the fee simple owner of the subject property, along with removing all clouds upon the subject title. On appeal, Brownphil enumerates as errors the trial court's denial of its motion for summary judgment and the trial court's grant of summary judgment to Cudjoe by

finding that Cudjoe owned the subject property by prescription under color of title. Upon our review, we affirm the trial court's judgment.

> To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, so that the party is entitled to a judgment as a matter of law. When a plaintiff moves for summary judgment, he has the burden of establishing the absence or non-existence of any defense raised by the defendant. When a defendant moves for summary judgment, he has the burden of either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims. We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Because this opinion addresses cross-motions for summary judgment, we will construe the facts in favor of the nonmoving party as appropriate.*

(Citations and punctuation omitted, emphasis supplied.) 905 *Bernina Avenue Coop. v. Smith/Burns LLC*, 342 Ga. App. 358, 361 (1) (802 SE2d 373) (2017). See also OCGA § 9-11-56 (c).[1]

---

[1] OCGA § 9-11-56 (c) provides in pertinent part that,
[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law; but nothing in this Code section shall be construed as

So viewed, the record demonstrates that the land at issue, is an empty lot located at 988 Linden Avenue, ("the Property") in Bibb County, more specifically, Macon, Georgia. The chain of title reflects that the Property was conveyed to Earnest and Louise McClendon by warranty deed dated 1958 and recorded in the Bibb County deeds record. In December 1985, the McClendons conveyed the Property to Grier Construction Company by warranty deed which was also recorded in the county deeds record. Grier Construction, which was owned and operated by Cudjoe's grandfather, Freddie L. Grier, is not registered as a corporation with the Georgia Secretary of State, nor is the business registered with Bibb County. In 1997, Freddie Grier executed a deed to the Property to Cudjoe, who then recorded the deed in 2003.

Both McClendons died in 1992 - Louise in January, intestate, and Earnest in March, testate. The couple's surviving heirs were two adult children, and a predeceased child's three adult children. Louise's estate was administered by one of

denying to any party the right to trial by jury where there are substantial issues of fact to be determined. A summary judgment may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damage.

her children, and the estate of Earnest was never administered. In 2019, Brownphil purchased the Property from the McClendon estate administrator and heirs by quit claim deed and recorded such deed in the county deed records.

However, starting in 1997, and acting under the belief that he owned the property that had been deeded to him by his grandfather, Cudjoe paid the property taxes and maintained the Property, which he averred included "arrang[ing] for the mowing of the grass on the property and any other maintenance." Apparently, there were failed negotiations to purchase the Property during 2016-2018, although it is unclear from the record who was involved in the discussions with Cudjoe.[2]

In April 2020, Brownphil filed a petition to quiet title pursuant to OCGA § 23-3-40 et seq. to remove any clouds upon the Property's title. In the petition, Brownphil argued that the deed from the McClendons to Grier Construction did not convey title because it was conveyed to a nonexistent company. Likewise, it argued, Cudjoe's deed also did not convey title because his deed was conveyed from his grandfather, Freddie Grier, and there was no deed to the grandfather in the chain of title. Brownphil

---

[2] The record includes correspondence to Cudjoe from a party purportedly representing Mercer University with a "last lump sum offer" for the Property made during the course of the action. The correspondence also references a previously withdrawn offer from Mercer.

concluded that "Cudjoe does not own the Property. Title remained in the McClendon family until it was deeded to Brownphil, LLC by Quit Claim Deed." Cudjoe answered and responded that he "ha[d] owned the property for many years."[3]

The court appointed a Special Master "to ascertain and determine the validity, nature, or extent of petitioner's title and all other interests in the land, or any part thereof, which may be adverse to the title claimed by the petitioner, or to remove any particular cloud or clouds upon the title to the land and to make a report of his findings to the judge of the court." OCGA § 23-3-66. Prior to the Special Master's hearing, Brownphil and Cudjoe filed cross-motions for summary judgment, each claiming ownership of all interests in the Property

Following a hearing, and considering the parties' cross-motions for summary judgment, the Special Master issued its report and concluded that "there is no genuine issue of material fact to be resolved regarding [Brownphil's] ownership of the property" and that "all interests in and title to the Property remained with Earnest

---

[3] The Corporation of Mercer University was served as the only adjoining landowner to the Property, but declined to file an answer in response to the petition.

and Louise McClendon, and the McClendons' interest was conveyed to Brownphil, LLC by the heirs of the McClendons."[4]

Moreover, the Special Master found that Cudjoe had not acquired title to the property by prescription "because his possession was not obvious, apparent, nor notorious to others that he controlled (or intended to assert control or dominion) over the land." According to the Special Master, Cudjoe's "occasional mowing of premises and payment of taxes on the premises did not constitute actual possession as required to enable title to ripen by prescription into fee simple title." For this same reason, the Special Master concluded that Cudjoe had also not established title by adverse possession under color of title, despite Cudjoe having a recorded deed. The Special Master reasoned that because Cudjoe could not satisfy the essential elements of adverse possession – public, continuous, exclusive, uninterrupted, and peaceable possession– he could not establish adverse possession under color of title, irregardless of his recorded deed.[5] Cudjoe filed an objection to the Special Master's report.

_____

[4] The Special Master noted that Cudjoe conceded that the deed from the McClendons to Grier Construction and the deed from Freddie Grier, his grandfather, to Cudjoe were void.

[5] Cudjoe also challenged Brownphil's position as the proper party in the action and posited that, Brownphil, as a single-member limited liability company with Mercer

The trial court adopted the Special Master's report, and decreed, among other things, that Brownphil "has met all statutory requirements for relief under OCGA § § 23-3-60, et seq.; that [Brownphil's] fee simple title to the Property is valid; and that any and all clouds upon that title particularly and especially any interests once held by . . . Cudjoe . . . be removed."(emphasis omitted.) But, because Cudjoe had not received certain communications between Brownphil and the trial court before the entry of the final decree, the parties filed a joint motion for the trial court to rescind the decree so that Brownphil could respond to Cudjoe's objections, and allow Cudjoe an opportunity to present his objections to the trial court. The court granted the motion by consent order.

Thereafter, the trial court held oral argument on the objection to the Special Master's report, after which it entered the order appealed – granting summary judgment to Cudjoe and denying summary judgment to Brownphil. The trial court held that even if the chain of title was unclear, Cudjoe had acquired prescriptive title to the Property. It concluded that Cudjoe had prescriptive title pursuant to OCGA §

_____

University as its only member, was wholly controlled by Mercer. The Special Master rejected Cudjoe's argument and held instead that Brownphil owned the Property and was the proper party to bring the quiet title action.

44-5-161, reasoning that whether the county deed records had conferred good title or not, Cudjoe had acted as if he had title to the Property, and additionally his "possession, dominion, and control was public, continuous, exclusive, uninterrupted, and peaceable." The trial court further found that Cudjoe had separately acquired title to the Property pursuant to OCGA § 44-5-164 – prescription under color of title– in that he had "possessed the property under written evidence of title for a period of seven (7) years."[6] This appeal ensued.

In related enumerations of error, Brownphil contends that the trial court erred by denying its motion for summary judgment. It also asserts that the trial court erred when the trial court found that Cudjoe owns the property by prescription under color of title pursuant to OCGA § 44-5-161.

According to Brownphil, it was entitled to summary judgment on its action to quiet title because the evidence was conclusive that it had established sole ownership of the property, as the last valid deed was the McClendon's warranty deed, and Brownphil had procured proper and legal title from the McClendon heirs by the 2019

---

[6] The trial court determined that it "need not reach the issue of real party in interest and DENIES the same."

quit claim deed. This contrasts with Cudjoe's chain of title, Brownphil argues, which it asserts was void and defective in that the conveyors of title to Cudjoe did not have a valid or proper title to convey. Brownphil reiterates that Grier Construction never received an interest in the Property because it was not a person or legal entity, and that Freddie Grier - Cudjoe's grandfather and conveyor of the property to Cudjoe- never appeared in the chain of title, and thus could not convey the property to Cudjoe.

Regarding Brownphil's first contention asserting its entitlement to summary judgment based on the superiority of its chain of title over that of Cudjoe, the trial court held that even if the chain of title was unclear, Cudjoe had acquired prescriptive title. Thus, in assessing any error ascribed to the denial of Brownphil's motion for summary judgment, the initial inquiry must be whether the trial court erred in finding that Cudjoe had obtained prescriptive title.

OCGA § 44-5-164 provides that

[p]ossession of real property under written evidence of title in conformance with the requirements of Code Section 44-5-161[7] for a

---

[7] OCGA § 44-5-161 (a) provides that,
[i]n order for possession to be the foundation of prescriptive title, it: (1) Must be in the right of the possessor and not of another; (2) Must not have originated in fraud except as provided in Code Section 44-5-162; (3)

period of seven years shall confer good title by prescription to the property against everyone except the state and those persons laboring under the disabilities stated in Code Section 44-5-170, provided that, if the written title is forged or fraudulent and if the person claiming adverse possession had actual notice of such forgery or fraud when he commenced his possession, no prescription may be based on such possession.

Thus, construing the statues together, "[t]o establish title by adverse possession . . . by . . . seven years under *color of title*, a party must show possession not originated in fraud that is public, continuous, exclusive, uninterrupted and peaceable, and accompanied by a claim of right." (Citation omitted; emphasis supplied.) *Cooley v. McRae*, 275 Ga. 435, 436 (569 SE2d 845) (2002). It is undisputed that Cudjoe possessed and recorded a deed which purported to convey the Property to him. See *Capers v. Camp*, 244 Ga. 7, 11 (3) (257 SE2d 517) (1979) ("Color of title is writing upon its face professing to pass title, but which does not do it, either from want of title in the person making it, or from the defective conveyance that is used – a title that is

---

Must be public, continuous, exclusive, uninterrupted, and peaceable; and (4) Must be accompanied by a claim of right.

imperfect, but not so obviously so that it would be apparent to one not skilled in the law.") (citation and punctuation omitted.) Accordingly, although the conveyance from the grandfather, who does not appear in the chain of title, to Cudjoe could not, by deed, convey the Property, the deed bestowed color of title under which title by prescription would ripen in seven years. See OCGA § 44-5-164. *Young v. Faulkner,* 217 Ga. App. 321, 324 (3) (457 SE2d 584) (1995) (noting that "[w]hile possession must be accompanied by a claim of right in order to obtain title by prescription, this does not mean that the possession must be accompanied by a claim of title out of some predecessor; rather it does mean that there must be some claim of title in the sense that the possessor claims the property as his own") (citations and punctuation omitted.)

Thus, the deed was sufficient to bestow on Cudjoe color of title, which could ripen into complete title by his possession of it for at least seven years.

Brownphil asserts that notwithstanding Cudjoe's possession of the deed that purportedly conveyed title to him, Cudjoe cannot satisfy the additional requirement of OCGA § 44-5-164 – that his possession of the property was "public, continuous,

exclusive, uninterrupted, and peaceable" pursuant to OCGA § 44-5-161 (a) (3). Brownphil more specifically argues that Cudjoe's payment of taxes on the property and occasional mowing of the grass do not establish control and possession over the property.

"Adverse possession is usually a mixed question of law and fact -- whether the facts exist which constitute adverse possession, is for the jury to judge. Whether, assuming the facts proven to be true, they constitute adverse possession, is for the court to decide." (Citation and punctuation omitted.) *Faulkner,* 217 Ga. App. at 324 (3). Here, the facts supporting Cudjoe's adverse possession are undisputed.

Even accepting as true that, as Brownphil contends, Cudjoe's maintenance of the Property and payment of property taxes were not sufficient to establish actual possession, possession of a recorded deed has been held to be sufficient as not only "notice . . . to the world of the [possessor's] claim of title," *Poore v. Poore*, 210 Ga. 371, 372 (80 SE2d 294) (1954), but also "the element of notoriety essential to its being adverse." (Citations and punctuation omitted.) *Gordon v. Ga. Kraft Co.*, 217 Ga. 500 (8) (123 SE2d 540) (1962) (public recordation of deed provides notoriety for adverse

constructive possession). Likewise, as the trial court noted "[Brownphil] even recognized [Cudjoe's] ownership when engaging him in negotiations for the purchase of the [P]roperty pre-suit and after the suit was served. It was not until 2019, after [Brownphil's] negotiations with [Cudjoe] failed, that Brownphil began contacting heirs to persons earlier in the chain of title."

Here, the uncontroverted evidence showed that possession by Cudjoe under the 1997 claim of title, which was recorded in 2003, lasted significantly more than 7 years, was open and notorious, exclusive, adverse, peaceable, and was not tainted by fraud. Cudjoe's claim of title therefore ripened into prescriptive title under OCGA § 44-5-161 as a matter of law. Thus, the trial court did not err in denying Brownphil's motion for summary judgment and finding that Cudjoe's had established ownership of the Property by prescription.

*Judgment affirmed. Land and Watkins, JJ., concur.*